UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**PATRICIA CLEARY**, *an individual*,

     Plaintiff,

vs.

**CISCO SYSTEMS, INC.,** *a foreign corporation,* and **PAUL KURTZ**, *an individual,*

     Defendants.

Case No.  20-cv
Hon.
Mag.

_____

**DEBORAH GORDON LAW**
Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Alana A. Karbal (P82908)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com
akarabal@deborahgordonlaw.com

_____

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES Plaintiff Patricia Cleary, by and through her attorneys Deborah Gordon Law, and complains against Defendants Cisco Systems, Inc., and Paul Kurtz as follows:

1

## Parties and Jurisdiction

1.     This is an action by Plaintiff Patricia Cleary against her former employer, Cisco Systems, Inc. and her former manager Paul Kurtz for discrimination based on gender and age and for retaliation for reporting the discrimination.

2.     Patricia Cleary ("Plaintiff") is an individual residing in Oakland County Michigan.

3.     Defendant Cisco Systems, Inc. ("Cisco") is a foreign corporation doing business in the State of Michigan.

4.     Defendant Paul Kurtz ("Kurtz") is an individual residing in Oakland County Michigan.

5.     The amount in controversy is in excess of 75,000.00.

6.     Jurisdiction is proper under 28 USC § 1331.

## Background Facts

7.     Plaintiff began employment with Cisco in November 1998, selling information technologies.

8.     Plaintiff held the position of Major Account Manager on the Michigan Select Team during the time period at issue here.

9.     At all times Plaintiff performed her job in manner that was at least satisfactory.

10.     In February 2018, Kurtz became Plaintiff's manager.

11.    When Kurtz became Plaintiff's manager, he was 37 years old; Plaintiff was 56.

12.    In July 2018, Kurtz and Tony Meredith, Kurtz's manager, prevented Plaintiff from "pre-booking" an account opportunity that would have provided her credit prior to the company's year-end. The credit for this sale would have boosted her year-end sales number.

13.    Kurtz subsequently authorized male sales agents to "pre-book" opportunities in their assigned accounts.

14.    Plaintiff's compensation was dependent on her sales, which was dependent on the clients to whom she was assigned.

15.    It was common knowledge in Plaintiff's workplace that some clients were better prospects than others.

16.    Kurtz assigned clients with better prospects to male sales agents while assigning Plaintiff more difficult clients with less prospect for sales.

17.    Plaintiff discussed sales goals, compensation and account assignments with her male contemporaries to ensure she was being fairly compensated and that the accounts and assigned account goals were fair.

18.    During a September 2018 meeting with Kurtz, Plaintiff was severely reprimanded for discussing sales goals, compensation and accounts with her male peers.

19.     Kurtz told Plaintiff to cease all further sales goals, compensation and account assignment discussion with her coworkers.

20.     None of the male coworkers received reprimands for these discussions.

21.     Plaintiff also learned that two male co-workers had been given additional accounts and/or exchanged accounts without adding to their yearly goals, which provided them with the opportunity to increase their yearly numbers against goal.

22.     Plaintiff was not afforded this same opportunity.

23.     On October 8, 2018, Plaintiff filed a written complaint with Cisco's human resources team based on the unjustified reprimand described above, and the unfair advantages given to her male co-workers.

24.     Plaintiff complained she was being unduly scrutinized, targeted and provided less opportunity than her male counterparts.

25.     The complaint languished in the human relations department.

26.     In 2018, Kurtz began a systematic purge of older sales agents, and hired in younger employees.

27.     In May 2018, a 48-year-old sales agent was placed on a Performance Improvement Plan ("PIP") and forced out of the company.

28.     In June 2018, a 50-plus-year-old sales agent was placed on a PIP and forced out of the company.

4

29.    In November 2018, a 57-year-old sales agent left the company after receiving unwarranted reprimands and extreme scrutiny.

30.    In March 2019, following Kurtz's request for candidates for an open position, Plaintiff forwarded the resume of a 50-year-old colleague.

31.    The resume demonstrated the individual was highly qualified for the position.

32.    Kurtz refused to interview the candidate because, as he stated, "He had more experience than I do."

33.    In April 2019, Plaintiff again complained to human resources, this time about discrimination based on age.

34.    In February 2019, Kurtz was made aware that Plaintiff had filed a complaint against him.

35.    From that point on Kurtz engaged in a concerted effort to get rid of Plaintiff.

36.    Plaintiff began receiving write ups for trivial matters such as failing to put a full mailing address in an email.

37.    Plaintiff's male coworkers and employees who had not filed complaints with human resources were not subjected to such harsh discipline for trivial matters.

38.    In April 2019, Kurtz reported Plaintiff as needing mental health resources and had an Executive Crisis and Civility Case Manager contact Plaintiff

about her mental stability. Plaintiff had not requested any assistance and was not in need of 'crisis' support.

39.     In May 2019, the Cisco human relations team finally responded to Plaintiff's complaint, finding that no discrimination had occurred.

40.     Kurtz continued to unfairly harass Plaintiff based on her gender, age and human resources complaints.

41.     On the same day Plaintiff was placed on the PIP, she was also asked to resign. She refused.

42.     Plaintiff was undeservingly placed on a PIP because her performance was satisfactory or above; in fact, Plaintiff was a top salesperson on her team for the year.

43.     Aside from the above, the PIP in and of itself was unfair in that at least one of the goals, improved forecast accuracy, was already unattainable when the PIP was presented.

44.     Plaintiff tried her best to comply with the plan objectives despite the fact that the PIP was unwarranted, and a harassment tool used against her by Kurtz.

45.     On August 5, 2019 Plaintiff was informed that she was being terminated, before the PIP even ended.

46.     Kurtz, in an effort to bring attention to Plaintiff's departure, obtained a guard to personally escort Plaintiff through their office, the building in which the office was located and to her vehicle.

## COUNT I
### Sex Discrimination in Violation of Title VII of the Civil Rights Act of 1964
### Difference in Treatment/Hostile Environment

47.     Plaintiff hereby incorporates all prior paragraphs as if they were set forth fully herein.

48.     At all material times Plaintiff was an employee and Defendants were her employer, covered by and within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII").

49.     Plaintiff is a member of a protected class; she is female.

50.     Defendants' treatment of Plaintiff, as described above, was based, in part, on unlawful consideration of her sex/gender.

51.     Similarly situated men were treated better than Plaintiff with respect to the terms and conditions of her employment.

52.     Plaintiff was subjected to a hostile environment by Kurtz, based on her gender.

53.     Defendants' agents were predisposed to discriminate against Plaintiff based on her sex/gender.

54.     As a direct and proximate result of Defendants' unlawful conduct, as

described above, the terms, conditions, and privileges of Plaintiff's employment were adversely affected.

55.    The actions of Defendants' employees, agents, and representatives were willful, intentional, and in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

56.    As a direct and proximate result of Defendants' violation of Plaintiff's rights as alleged herein, she has suffered past and future loss of earnings and earning capacity; loss of the value of benefits; she has sustained mental and emotional distress, embarrassment, humiliation, mental anguish, and anxiety; damage to her good name and reputation; and loss of the ordinary pleasures of everyday life.

## COUNT II
### *Sex Discrimination in Violation of Michigan's Elliott-Larsen Civil Rights Act Difference in Treatment/Hostile Environment*

57.    Plaintiff hereby incorporates all prior paragraphs as if they were set forth fully herein.

58.    At all material times Plaintiff was an employee and Defendants were her employer, covered by and within the meaning of the Elliott-Larsen Civil Rights Act, MCL § 37.2101, *et seq.* (the "ELCRA").

59.    Plaintiff is a member of a protected class; she is female.

60.    Defendants' treatment of Plaintiff, as described above, was based, at least in part, on unlawful consideration of her sex/gender.

8

61.    Similarly situated men were treated better than Plaintiff with respect to the terms and conditions of her employment.

62.    Plaintiff was subjected to a hostile environment based on her gender.

63.    Defendants' employees, agents, and representatives were predisposed to discriminate against Plaintiff based on her sex/gender.

64.    As a direct and proximate result of Defendants' unlawful conduct, as described above, the terms, conditions, and privileges of Plaintiff's employment were adversely affected.

65.    The actions of Defendants' employees, agents, and representatives were willful, intentional, and in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

66.    As a direct and proximate result of Defendants' violation of Plaintiff's rights as alleged herein, she has suffered past and future loss of earnings and earning capacity; loss of the value of benefits; she has sustained mental and emotional distress, embarrassment, humiliation, mental anguish, and anxiety; damage to her good name and reputation; and loss of the ordinary pleasures of everyday life.

**COUNT III**
*Retaliation in Violation of Title VII of the Civil Rights Act of 1964*

67.    Plaintiff hereby incorporates all prior paragraphs as if they were set forth fully herein.

68.    At all material times Plaintiff was an employee and Defendants were her employer, covered by and within the meaning of Title VII, *as amended*, 42 U.S.C. § 2000e, *et seq.*

69.    Plaintiff engaged in conduct protected under Title VII including, but not limited to, opposing discrimination based on gender and by reporting Defendants' unlawful employment practices, which violate Title VII.

70.    Plaintiff's treatment by Defendants' following her protected conduct described above was retaliatory and occurred, in part, because Plaintiff opposed and made a complaint regarding Defendants' unlawful employment practices, in violation of the anti-retaliation provisions of Title VII.

71.    As a direct and proximate result of Defendants' unlawful conduct described above, the terms, conditions, and privileges of Plaintiff's employment were adversely affected.

72.    The actions of Defendants' employees, agents, and representatives were willful, intentional, and in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

73.    As a direct and proximate result of Defendants' violation of Plaintiff's rights as alleged herein, she has suffered past and future loss of earnings and earning capacity; loss of the value of benefits; she has sustained mental and emotional distress, embarrassment, humiliation, mental anguish, and anxiety; damage to her

10

good name and reputation; and loss of the ordinary pleasures of everyday life.

## COUNT IV
### *Age Discrimination in Violation of the Age Discrimination in Employment Act*

74.     Plaintiff hereby incorporates all prior paragraphs as if they were set forth fully herein.

75.     At all material times Plaintiff was an employee and Defendants were her employer, covered by and within the meaning of the Age Discrimination in Employment Act, 29 U.S.C. 621 *et. seq*.

76.     Plaintiff is a member of a protected class; she is over the age of 40.

77.     Defendants' treatment of Plaintiff, as described above, was based, at least in part, on unlawful consideration of her age.

78.     Similarly situated younger employees were treated better than Plaintiff with respect to the terms and conditions of her employment.

79.     Defendants' employees, agents, and representatives were predisposed to discriminate against Plaintiff based on her age.

80.     As a direct and proximate result of Defendants' unlawful conduct, as described above, the terms, conditions, and privileges of Plaintiff's employment were adversely affected.

81.     The actions of Defendants' employees, agents, and representatives were willful, intentional, and in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

82. As a direct and proximate result of Defendants' violation of Plaintiff's rights as alleged herein, she has suffered past and future loss of earnings and earning capacity; loss of the value of benefits; she has sustained mental and emotional distress, embarrassment, humiliation, mental anguish, and anxiety; damage to her good name and reputation; and loss of the ordinary pleasures of everyday life.

## COUNT V
### *Age Discrimination in Violation of Michigan's Elliott-Larsen Civil Rights Act*

83. Plaintiff hereby incorporates all prior paragraphs as if they were set forth fully herein.

84. At all material times Plaintiff was an employee and Defendants were her employer, covered by and within the meaning of the ELCRA, MCL § 37.2101, *et seq.*

85. Defendants' treatment of Plaintiff, as described above, was based, at least in part, on unlawful consideration of her age.

86. Similarly younger employees were treated better than Plaintiff with respect to the terms and conditions of her employment.

87. Defendants' employees, agents, and representatives were predisposed to discriminate against Plaintiff based on her age.

88. As a direct and proximate result of Defendants' unlawful conduct, as described above, the terms, conditions, and privileges of Plaintiff's employment

were adversely affected.

89.    The actions of Defendants' employees, agents, and representatives were willful, intentional, and in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

90.    As a direct and proximate result of Defendants' violation of Plaintiff's rights as alleged herein, she has suffered past and future loss of earnings and earning capacity; loss of the value of benefits; she has sustained mental and emotional distress, embarrassment, humiliation, mental anguish, and anxiety; damage to her good name and reputation; and loss of the ordinary pleasures of everyday life.

## COUNT VI
### *Retaliation in Violation of the Age Discrimination in Employment Act*

91.    Plaintiff hereby incorporates all prior paragraphs as if they were set forth fully herein.

92.    At all material times Plaintiff was an employee and Defendants were her employer, covered by and within the meaning of the Age Discrimination in Employment Act, 29 U.S.C. 621 *et. seq.* ("the ADEA").

93.    Plaintiff engaged in conduct protected under the ADEA including, but not limited to, reporting Defendants' unlawful employment practices, which violate the ADEA.

94.    Plaintiff's treatment by Defendants' following her protected conduct

was retaliatory and occurred, in part, because Plaintiff made a complaint regarding Defendants' unlawful employment practices, in violation of the anti-retaliation provisions of the ADEA.

95.     As a direct and proximate result of Defendants' unlawful conduct, as described above, the terms, conditions, and privileges of Plaintiff's employment were adversely affected.

96.     The actions of Defendants' employees, agents, and representatives were willful, intentional, and in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

97.     As a direct and proximate result of Defendants' violation of Plaintiff's rights as alleged herein, she has suffered past and future loss of earnings and earning capacity; loss of the value of benefits; she has sustained mental and emotional distress, embarrassment, humiliation, mental anguish, and anxiety; damage to her good name and reputation; and loss of the ordinary pleasures of everyday life.

## COUNT VII
### *Retaliation in Violation of Michigan's Elliott-Larsen Civil Rights Act*

98.     Plaintiff hereby incorporates all prior paragraphs as if they were set forth fully herein.

99.     At all material times Plaintiff was an employee and Defendants were her employer, covered by and within the meaning of the ELCRA, MCL § 37.2101,

*et seq.*

100.   Plaintiff engaged in conduct protected under the ELCRA including, but not limited to, by making a complaint regarding Defendants' unlawful employment practices, which violate the ELCRA.

101.   Plaintiff's treatment by Defendants' following her protected conduct was retaliatory and occurred, in part, because Plaintiff opposed and made a complaint regarding Defendants' unlawful employment practices, in violation of the anti-retaliation provisions of the ELCRA.

102.   As a direct and proximate result of Defendants' unlawful conduct, as described above, the terms, conditions, and privileges of Plaintiff's employment were adversely affected.

103.   The actions of Defendants' employees, agents, and representatives were willful, intentional, and in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

104.   As a direct and proximate result of Defendants' violation of Plaintiff's rights as alleged herein, she has suffered past and future loss of earnings and earning capacity; loss of the value of benefits; she has sustained mental and emotional distress, embarrassment, humiliation, mental anguish, and anxiety; damage to her good name and reputation; and loss of the ordinary pleasures of everyday life.

## RELIEF REQUESTED

For all the foregoing reasons, Plaintiff Patricia Cleary demands judgment against Defendants as follows:

### A.   LEGAL RELIEF

    1.    Compensatory, economic, and noneconomic damages in whatever amount she is found to be entitled;

    2.    Exemplary damages in whatever amount she is found to be entitled;

    3.    Punitive damages in whatever amount she is found to be entitled;

    4.    Liquidated damages in whatever amount she is found to be entitled; and

    5.    An award of interest, costs and reasonable attorney fees.

### B.   EQUITABLE RELIEF

    1.    An order from this Court placing Plaintiff in the position she would have been in had there been no wrongdoing by Defendants, including reinstatement with back pay;

    2.    An injunction out of this Court prohibiting any further acts of wrongdoing;

    3.    An award of interest, costs and reasonable attorney fees; and

    4.    Whatever other equitable relief appears appropriate at the time of final judgment.

Dated:  January 10, 2020        **DEBORAH GORDON LAW**
        Deborah L. Gordon (P27058)
        Elizabeth Marzotto Taylor (P82061)
        Alana A. Karbal (P82908)

Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500/fax (248) 258-7881
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com
akarbal@deborahgordonlaw.com

## **JURY DEMAND**

Plaintiff Patricia Cleary, by and through her attorneys Deborah Gordon Law,

demands a trial by jury of all the issues in this cause.

Dated:  January 10, 2020            **DEBORAH GORDON LAW**
Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Alana A. Karbal (P82908)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500/fax (248) 258-7881
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com
akarbal@deborahgordonlaw.com