UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICIA CLEARY,

U.S. District Court No. 20-10071

            Plaintiff,

Honorable Linda V. Parker
Honorable David R. Grand

v.

CISCO SYSTEMS, INC and
PAUL KURTZ,

            Defendants.

---

DEBORAH GORDON LAW
Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Alana A. Karbal (P82908)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway,
Ste. 220
Bloomfield Hills, MI 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
amarzottotaylor@deborahgordonlaw.com
akarabal@deborahgordonlaw.com

KIENBAUM HARDY VIVIANO
  PELTON & FORREST, P.L.C.
By:  Elizabeth P. Hardy (P37426)
     Thomas J. Davis (P78626)
Attorneys for Defendants
280 N. Old Woodward Avenue
Suite 400
Birmingham, MI 48009
(248) 645-0000
ehardy@khvpf.com
tdavis@khvpf.com

---

**Motion to Compel Arbitration and Dismiss the Complaint**

Defendants Cisco Systems, Inc. and Paul Kurtz, by their attorneys Kienbaum Hardy Viviano Pelton & Forrest, P.L.C., move pursuant to Federal Rule of Civil Procedure 12(b)(6) and 56(c) to compel enforcement of the parties' binding arbitration agreement and to dismiss Plaintiff's complaint, because a binding arbitration agreement exists between the parties for resolving the claims raised in Plaintiff's complaint. In support of their motion, Defendants state as follows:

1.    On January 10, 2020, Plaintiff commenced this action by filing a complaint alleging, among other things, that she was terminated from her employment at Cisco Systems, Inc. due to her age, sex, and retaliation.

2.    Plaintiff was subject to an arbitration agreement, which applies to all employment claims—including based on claims of harassment, retaliation, and discrimination—against Cisco and any of its agents or employees. Defendant Kurtz is an employee sued for his alleged acts in his capacity as an agent of Cisco Systems.

3.    Under both federal law and Michigan law, such pre-dispute arbitration agreements are enforceable. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001); *Rembert v. Ryans Family Steakhouses, Inc.*, 235 Mich. App. 118 (1999). Plaintiff should therefore be required to pursue her claims, if at all, in the arbitration forum she agreed to, and this action should be dismissed.

4.    Cisco's counsel spoke with opposing counsel by telephone to discuss the relief on February 3, 2020 and the deadline for responding to her complaint, but

opposing counsel did not state whether she would consent to the relief, necessitating the filing of this motion.

WHEREFORE, for these reasons and those set forth in more detail in the brief accompanying this motion, Defendants ask the Court to dismiss Plaintiff's complaint so that she may pursue her claims against Defendants, if at all, in arbitration.

KIENBAUM HARDY VIVIANO
PELTON & FORREST, P.L.C.

/s/*Elizabeth P. Hardy*
By:  Elizabeth P. Hardy (P37426)
      Thomas J. Davis (P78626)
Attorneys for Defendants
280 N. Old Woodward Avenue
Suite 400
Birmingham, MI 48009
(248) 645-0000
ehardy@khvpf.com
tdavis@khvpf.com

Dated: February 4, 2020

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICIA CLEARY,                              U.S. District Court No. 20-10071

                        Plaintiff,           Honorable Linda V. Parker
                                             Honorable David R. Grand

v.

CISCO SYSTEMS, INC and
 PAUL KURTZ,

                  Defendants.
_____

DEBORAH GORDON LAW                    KIENBAUM HARDY VIVIANO
Deborah L. Gordon (P27058)             PELTON & FORREST, P.L.C.
Elizabeth Marzotto Taylor (P82061)    By: Elizabeth Hardy (P37426)
Alana A. Karbal (P82908)                   Thomas J. Davis (P78626)
Attorneys for Plaintiff               Attorneys for Defendants
33 Bloomfield Hills Parkway,          280 N. Old Woodward Avenue
Ste. 220                              Suite 400
Bloomfield Hills, MI 48304            Birmingham, MI 48009
(248) 258-2500                        (248) 645-0000
dgordon@deborahgordonlaw.com          ehardy@khvpf.com
amarzottotaylor@deborahgordonlaw.com  tdavis@khvpf.com
akarabal@deborahgordonlaw.com
_____

**Brief in Support of Defendants' Motion to Compel Arbitration
and Dismiss the Complaint**

## Concise Statement of the Issue Presented

1.  Plaintiff is subject to an arbitration agreement with Cisco that covers all claims against Cisco and its agents or employees, including specifically wrongful termination, discrimination, harassment, and retaliation claims. She has personally invoked that agreement against Cisco in the past. Should the Court dismiss the complaint so that the claims against Cisco and current Cisco employee Paul Kurtz can be arbitrated?

# Table of Contents

Concise Statement of the Issue Presented...................................................... i

Table of Authorities ...................................................................................... iii

Introduction...................................................................................................1

Statement of the Case....................................................................................1

Standard of Review........................................................................................3

Argument.......................................................................................................3

I.      The Federal Arbitration Act applies to the parties' agreement. .....................4

II.     The arbitration agreement is valid and binding.............................................5

        A.      Cleary, having invoked the arbitration agreement against
                Cisco before, is estopped from claiming that the
                agreement is not valid or applicable to her employment
                claims........................................................................................5

        B.      The arbitration agreement is valid........................................................7

        C.      The dispute in question falls within the scope of the
                Mutual Arbitration Agreement...........................................................10

Conclusion ...................................................................................................11

# Table of Authorities

## Cases

*14 Penn Plaza LLC v. Pyett*,
  556 U.S. 247 (2009) ...................................................................................3

*Allied-Bruce Terminix Cos. v. Dobson*,
  513 U.S. 265 (1995) ...................................................................................4

*Am. Express Co. v. Italian Colors Rest.*,
  570 U.S. 228 (2013) ...................................................................................3

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ...................................................................................3

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643 (1986) ...................................................................................4

*Bancorp Grp., Inc. v. Mich. Conf. of Teamsters Welfare Fund*,
  231 Mich. App. 163 (1998) .......................................................................10

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985) .................................................................................11

*E.E.O.C. v. Waffle House, Inc.*,
  534 U.S. 279 (2002) ...............................................................................4, 5

*Frazier Indus., L.L.C. v. Gen. Fasteners Co.*,
  137 F. App'x 723 (6th Cir. 2005)................................................................8

*Garlock v. Motz Tire & Rubber Co.*,
  192 Mich. 665 (1916) .................................................................................8

*Great Earth Cos. v. Simons*,
  288 F.3d 878 (6th Cir. 2002)......................................................................3

*Green Tree Fin. Corp.-Alabama v. Randolph*,
  531 U.S. 79, 92 (2000). ..............................................................................5

*Green v. Ameritech Corp.*,
  200 F.3d 967 (6th Cir. 2000)....................................................................11

*Hicks v. Cadle*,
　436 F. App'x 874 (10th Cir. 2011)........................................................6

*In re Estate of Erickson*,
　202 Mich. App. 329, 508 N.W.2d 181 (1993) ....................................7

*Kloian v. Domino's Pizza, LLC*,
　273 Mich. App. 449 (2006) ..................................................................9

*M & D Robinson Co. v. Dunitz*,
　12 Mich. App. 5 (1968) ......................................................................10

*New Hampshire v. Maine*,
　532 U.S. 742 (2001) .............................................................................6

*Peck Ormsby Const. Co. v. City of Rigby*,
　526 F. App'x 769 (9th Cir. 2013)........................................................5

*PolyOne Corp. v. Westlake Vinyls, Inc.*,
　937 F.3d 692 (6th Cir. 2019)...............................................................5

*PowerAgent Inc. v. Elec. Data Sys. Corp.*,
　358 F.3d 1187 (9th Cir. 2004).............................................................6

*QIS, Inc. v. Indus. Quality Control, Inc.*,
　262 Mich. App. 592 (2004) ..................................................................9

*Rembert v. Ryan's Family Steak Houses*,
　235 Mich. App. 118 (1999) ..................................................................8

*Rent-A-Center, West, Inc. v. Jackson*,
　561 U.S. 63 (2010) ...............................................................................3

*Sanchez v. Eagle Alloy Inc.*,
　254 Mich. App. 651 (2003) ..................................................................9

*Schreier v. Solomon*,
　2008 WL 4330192 (Mich. Ct. App. Sept. 23, 2008)...........................8

*Speroni S.p.A. v. Perceptron, Inc.*,
　12 F. App'x 355 (6th Cir. 2001)..........................................................6

*Stout v. J.D. Byrider*,
   228 F.3d 709 (6th Cir. 2000) ....................................................................4

*Tillman v. Macy's, Inc.*,
   735 F.3d 453 (6th Cir. 2013) .............................................................8, 9

**Statutes**

9 U.S.C. § 1 *et seq.*..................................................................................3

9 U.S.C. § 3 ..............................................................................................5

**Rules**

Fed. R. Civ. P. 56(a)................................................................................3

v

## Introduction

Plaintiff Patricia Cleary alleges that Cisco Systems, Inc. and Cisco manager Paul Kurtz subjected her to a hostile environment and terminated her under different theories of discrimination. R. 1, Compl. ¶¶ 47-104. But Cleary should never have filed her action in this Court, as Cleary's employment-related claims, including her claims against individual Cisco employees like Mr. Kurtz, are subject to an arbitration agreement. Cleary is well aware of this fact, as she acknowledged and affirmatively invoked her arbitration agreement in 2008 when—represented by her current counsel—she filed an arbitration action against Cisco alleging similar employment discrimination claims. *See* Ex. A, Decl. of June Haase ¶ 5.

Because Cleary's discrimination claims are subject to a binding arbitration agreement with Cisco, this Court should compel arbitration of Plaintiff's claims. And because the parties must arbitrate all of Cleary's claims, this Court should dismiss the Complaint rather than stay proceedings during arbitration.

## Statement of the Case

Plaintiff Patricia Cleary has worked with Cisco since November 1998. R. 1, Compl. ¶ 7. She subsequently became a Major Account Manager. *Id.* ¶ 8.  In 2008, Cleary—using the same law firm and attorney—brought arbitration against Cisco alleging employment discrimination. *See* Ex. A, Haase Decl. ¶ 5. In the transmittal letter to the arbitrator, she acknowledged Cisco's arbitration policy and agreement,

1

attaching a copy of the agreement to her arbitration demand. *Id.* ¶ 5 & Decl. Ex. 1. The matter proceeded to arbitration and was confidentially resolved. *Id.* ¶ 5.

The arbitration agreement provides, among other things, that the employee and Cisco "agree to arbitrate before a neutral arbitrator any and all disputes or claims arising from or relating to Employee's… employment with Cisco, or the termination of that employment, including claims against any current or former agent or employee of Cisco…." *Id.* ¶ 5, Decl. Ex. 1, Agreement p.1. The claims covered by the agreement expressly include, but are not limited to, "claims for discrimination, harassment, or retaliation under any and all federal, state, or municipal statutes." *Id.* Arbitration is the "sole and exclusive method of resolving" such disputes. *Id.* at Agreement p. 2.

Cleary was terminated from Cisco in August 2019. She brought this suit on January 10, 2020, with Cisco and Kurtz both served on January 14, 2020. *See* R. 1, Complaint; R. 4, Certificate of Summons Returned for Cisco; R. 5, Certificate of Summons Returned for Kurtz. The suit asserts discrimination claims against Cisco and Kurtz based on gender, age, and retaliation. R. 1 ¶ 1. Claims of this nature are explicitly covered by the arbitration agreement—including her claims against current Cisco employee Kurtz. Ex. A, Haase Decl. ¶ 5 & Decl. Ex. 1. But despite affirmatively invoking the arbitration agreement before, she has not consented to Cisco's request to dismiss and arbitrate, necessitating this motion.

2

## Standard of Review

Courts review a motion to compel arbitration under Rule 56(a) and the standard for summary judgment. *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (party opposing arbitration must show genuine issue of material fact). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986).

## Argument

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, requires courts to enforce arbitration agreements according to their terms. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-70 (2010). Public policy favors arbitration, including the arbitration of federal antidiscrimination disputes. *See, e.g., Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 238-239 (2013); *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 265-69 (2009). There is "a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns*

3

*Workers of Am.*, 475 U.S. 643, 650 (1986). And any ambiguities or doubts as to the parties' intentions should be resolved in favor of arbitration. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

Here, the parties' arbitration agreement is binding and valid. Cleary's claims fall squarely within the scope of the agreement. The Court should dismiss the case, so that it may proceed, if Cleary chooses, in arbitration.

I.     **The Federal Arbitration Act applies to the parties' agreement.**

The FAA governs any written agreement to arbitrate "evidencing a transaction involving commerce." 9 U.S.C. § 2. The term "involving commerce" is to be read as broadly as possible to cover any arbitration agreement that affects commerce in any way. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-281 (1995). And "[e]mployment contracts, except for those covering workers engaged in transportation, are covered by the FAA." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).

Here, the arbitration agreement with Cleary plainly falls within the FAA's scope. Cisco is a multi-national corporation headquartered in California that, among other things, engages in interstate and foreign commerce by manufacturing and selling networking hardware, software, and telecommunications equipment across state and national lines. Ex. A, Haase Decl. ¶ 3. An employment agreement between

4

Cisco and one of its sales employees like Cleary necessarily "involves commerce." *Waffle House*, 534 U.S. at 289.

## II.   **The arbitration agreement is valid and binding.**

Arbitration agreements are "valid, irrevocable, and enforceable… save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court … shall on application of one of the parties stay the trial…." 9 U.S.C. § 3. The burden is on the party opposing arbitration to proffer evidence demonstrating that the agreement is invalid. *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000). Clearly cannot meet that burden.

> ### A.   **Cleary, having invoked the arbitration agreement against Cisco before, is estopped from claiming that the agreement is not valid or applicable to her employment claims.**

As noted, Cleary earlier initiated arbitration with Cisco pursuant to the arbitration agreement. *See supra* pp. 1-2. And while, in that arbitration demand, she tried to disclaim any admission that the arbitration was binding, she cannot have it both ways. A party consenting to arbitration waives any subsequent challenge to the arbitrator's authority over the dispute. *PolyOne Corp. v. Westlake Vinyls, Inc.*, 937 F.3d 692, 698 (6th Cir. 2019); *see also Peck Ormsby Const. Co. v. City of Rigby*, 526 F. App'x 769, 770 (9th Cir. 2013) (a party "cannot accept

5

[arbitration's] benefits" and "at the same time question its validity."). Having
conceded arbitrability before, Cleary is estopped from disputing arbitrability now.

It is well-established that when "a party assumes a certain position in a legal
proceeding, and succeeds in maintaining that position, he may not thereafter,
simply because his interests have changed, assume a contrary position, especially if
it be to the prejudice of the party who has acquiesced in the position formerly taken
by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). The standard for
invoking judicial estoppel is flexible, consistent with its purpose of preventing
parties from "playing fast and loose with the courts." *Id.* at 750. Thus, "a position
taken in arbitration can give rise to judicial estoppel." *Speroni S.p.A. v. Perceptron,
Inc.*, 12 F. App'x 355, 358 & n.1 (6th Cir. 2001).

Cleary, having already taken the position that she is subject to the arbitration
agreement and that her employment claims fall within the scope of the agreement,
now wants to reverse position when it comes time for Cisco to invoke the same
agreement. The Court should not allow this. *See, e.g.*, *Hicks v. Cadle*, 436 F. App'x
874, 878 (10th Cir. 2011) (judicially estopping defendant from disputing
arbitrability of new tort claims arising out of party's contractual relationship, when
that party had argued that arbitration clause applied to tort claims raised in earlier
arbitration proceeding); *PowerAgent Inc. v. Elec. Data Sys. Corp.*, 358 F.3d 1187,
1192 (9th Cir. 2004) (holding that "where there is clear evidence of a party's intent

6

to be bound by the arbitrator's decision on the issue of arbitrability, that party is estopped from later changing its position and challenging the arbitrator's authority…."). She should be estopped from denying arbitrability.

**B.      The arbitration agreement is valid.**

In any event, the arbitration agreement is valid. The agreement provides that its "validity, construction and performance" are "governed by the laws of the State where Employee primarily works or worked," which was Michigan. Ex. A, Haase Decl. ¶ 5, Decl. Ex. 1, Agreement p. 3. In Michigan, the "essential elements of a valid contract are (1) parties competent to contract, (2) a proper subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Thomas v. Leja*, 187 Mich. App. 418, 422 (1991). All of these elements are met.

**1. Cleary was competent to contract.** The first element is easily met. Cleary—an adult woman of sound mind—was competent to contract. *See, e.g.*, *In re Estate of Erickson*, 202 Mich. App. 329, 332, 508 N.W.2d 181, 183 (1993) (holding that to be mentally incapable of contracting, a party must have an "unsoundness or insanity… of such a character that the person had no reasonable perception of the nature or terms of the contract.")

**2. Arbitration is a proper subject matter for contract.** The second element is also easily met. Arbitration is a proper subject matter for contract, as "arbitration agreements in the employment discrimination context… are valid and

7

consistent with Michigan public policy." *Rembert v. Ryan's Family Steak Houses*, 235 Mich. App. 118, 131 (1999).

**3. There was consideration for the arbitration agreement.** By its terms, the agreement was a *mutual* arbitration agreement; both sides promised to exclusively arbitrate claims they might have against the other, and that the agreement could not be modified except by both parties. *See, e.g.*, Ex. A, Haase Decl. ¶ 5, Decl. Ex. 1, Agreement pp. 1, 4. Mutual promises are consideration under Michigan law. *See, e.g.*, *Frazier Indus., L.L.C. v. Gen. Fasteners Co.*, 137 F. App'x 723, 732 (6th Cir. 2005) (applying Michigan law); *Garlock v. Motz Tire & Rubber Co.*, 192 Mich. 665, 672 (1916); *cf. Schreier v. Solomon*, 2008 WL 4330192, at *4 (Mich. Ct. App. Sept. 23, 2008) (recognizing that mutual agreement to arbitrate claims is sufficient, although not necessary, consideration for an arbitration agreement). Because both Cisco and Cleary mutually agreed to exclusively resolve their respective disputes through arbitration, there was consideration for the agreement.

In addition, continued employment is valid consideration for a contract in Michigan. In *Tillman v. Macy's, Inc.*, the Sixth Circuit—citing "several decisions applying Michigan law [that] have held that an offer may be accepted through continued employment"—held that an arbitration agreement was valid where it provided the employee would be covered by arbitration by virtue of continuing her

employment, and the employee indeed continued working. 735 F.3d 453, 460 (6th Cir. 2013). *See also, e.g.*, *QIS, Inc. v. Indus. Quality Control, Inc.*, 262 Mich. App. 592, 594 (2004) ("Mere continuation of employment is sufficient consideration to support a noncompete agreement in an at-will employment setting."). Here, Cleary's arbitration agreement—just as in *Tillman*—specified that the arbitration agreement, even if unsigned by the employee, would become "effective after a reasonable period" if "the Employee continues to accept employment after having notice of the modification." Ex. A, Haase Dec. ¶ 5, Decl. Ex. 1, Agreement p. 4. She continued working, triggering the imposition of the arbitration agreement, and Cisco's continuation of her employment was consideration under Michigan law.

**4. There was mutuality of agreement.** This element merely requires proof of mutual assent to the terms of the agreement, focused on offer and acceptance. *See, e.g.*, *Sanchez v. Eagle Alloy Inc.*, 254 Mich. App. 651, 665 (2003); *Tillman*, 735 F.3d at 456. Mutual assent is "judged on an objective standard, looking to the express words of the parties and their visible acts." *Kloian v. Domino's Pizza, LLC*, 273 Mich. App. 449, 454 (2006). In *Tillman*, the Sixth Circuit applying Michigan law held that the employer effectively communicated an arbitration offer by providing an employee with informational materials explaining the terms and conditions of the arbitration. 735 F.3d at 457-58. And *Tillman* held that, given the

9

written terms, the employee's conduct of continuing to work manifested her assent to the terms. *Id.* at 460.

Here, there is plainly mutuality of agreement. By filing her 2008 arbitration demand, Cleary establishes that she had been provided with, and was aware of, the arbitration agreement she had with Cisco. She cannot deny that, as of 2008, she was aware of the arbitration offer and its terms of acceptance. Knowing those terms, she continued to work at Cisco thereafter and thus accepted the offer.

**5. There was mutuality of obligation.** Finally, a valid contract requires mutuality of obligation, which "simply means that both parties are bound to an agreement or neither is bound." *Bancorp Grp., Inc. v. Mich. Conf. of Teamsters Welfare Fund*, 231 Mich. App. 163, 171 (1998). All it requires is that both parties have some obligation under the contract, and some remedy against the other for breach. *M & D Robinson Co. v. Dunitz*, 12 Mich. App. 5, 10 (1968). That element is easily met; both parties have an obligation to the other to arbitrate their claims, and either can compel enforcement of the contract and its terms, including the right to have claims arbitrated (as Cisco is being forced to do here).

## C.  The dispute in question falls within the scope of the Mutual Arbitration Agreement.

Finally, there can be no doubt that Cleary's harassment, discrimination, and retaliation claims are within the scope of the arbitration agreement, including her claims against her former manager Kurtz. The agreement specifically provides that

the arbitration agreement includes "any and all disputes or claims arising from or relating to Employee's… employment with Cisco, or the termination of that employment, including claims against any current or former agent or employee of Cisco." Ex. A, Haase Decl. ¶ 5, Decl. Ex. 1, Agreement p. 1. The agreement goes on to provide specific examples of the claims covered by this language, including "claims for wrongful termination of employment," and "claims for discrimination, harassment, or retaliation under any and all federal, state, or municipal statutes…." *Id.* The claims Cleary asserts are explicitly identified as within the scope of the arbitration agreement, and must be arbitrated.

## Conclusion

"By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitrate on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Because arbitration is mandated, the Court should dismiss, without prejudice, Cleary's complaint. *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000) (citing cases for the proposition that the best procedure for enforcing arbitration agreements is to dismiss the court action without prejudice.)

11

KIENBAUM HARDY VIVIANO
PELTON & FORREST, P.L.C.

/s/*Elizabeth P. Hardy*
By:  Elizabeth Hardy (P37426)
        Thomas J. Davis (P78626)
Attorneys for Defendants
280 N. Old Woodward Ave., Ste. 400
Birmingham, MI 48009
(248) 645-0000
ehardy@khvpf.com
tdavis@khvpf.com

Dated: February 4, 2020

## Certificate of Service

I hereby certify that on February 4, 2020, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all parties on record.

/s/ *Elizabeth Hardy*
Elizabeth Hardy (P37426)
Kienbaum Hardy Viviano
  Pelton & Forrest,  P.L.C.
280 N. Old Woodward Avenue, Suite 400
Birmingham, MI  48009
(248) 645-0000
ehardy@khvpf.com

360762