UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICIA CLEARY,

      Plaintiff,

v.                                              Civil Case No. 20-10071
                                                  Honorable Linda V. Parker

CISCO SYSTEMS, INC.
and PAUL KURTZ,

      Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS THE COMPLAINT

Plaintiff initiated this lawsuit on January 10, 2020, claiming retaliation and gender and age discrimination in violation of federal and state law. Defendants are Cisco Systems, Inc. ("Cisco"), Plaintiff's former employer, and Paul Kurtz, Plaintiff's manager at Cisco from February 2018 until her termination on August 5, 2019. The matter is presently before the Court on Cisco and Kurtz's Motion to Compel Arbitration and to Dismiss the Complaint. (ECF No. 8.) The motion has been fully briefed (ECF Nos. 9, 10), and the Court has dispensed with oral argument with respect to the motion (ECF No. 11). Because the Court concludes

that there is a valid agreement requiring the parties to arbitrate the claims in Plaintiff's Complaint, it is granting Defendants' motion.

## Factual Background

Plaintiff began working at Cisco as a Major Account Manager in November 1998. (Compl. ¶¶ 7, 8, ECF No. 1 at Pg ID 2.) In February 2018, Kurtz became Plaintiff's manager. (*Id.* ¶ 10, Pg ID 2.) At the time, Kurtz was thirty-seven years old and Plaintiff was fifty-six. (*Id.* ¶ 11, Pg ID 3.)

After Kurtz became Plaintiff's manager, he engaged in conduct that interfered with Plaintiff's ability to complete sales, which impacted her compensation, and he reprimanded her. (*See id.* ¶¶ 12-22, Pg ID 3-4.) Kurtz did not take the same action with respect to male sales agents. (*Id.*) On October 8, 2018, Plaintiff filed a complaint with Cisco's human resources team concerning Kurtz' behavior. (*Id.* ¶ 23, Pg ID 4.) The complaint languished. (*Id.* ¶ 25, Pg ID 4.)

In 2018, Kurtz began replacing older sales agents with younger employees. (*Id.* ¶ 26, Pg ID 4.) Older employees were placed on Performance Improvement Plans ("PIP") and then forced out of Cisco. (*Id.* ¶¶ 27-29, Pg ID 4-5.) Kurtz refused to interview a 50-year old candidate recommended by Plaintiff because the candidate was more experienced than Kurtz. (*Id.* ¶¶ 30-32, Pg ID 5.) In April

2

2019, Plaintiff again complained to human resources about Kurtz' behavior, specifically that he was engaging in age discrimination. (*Id.* ¶ 33, Pg ID 5.)

Plaintiff alleges that in February 2019, Kurtz became aware of her earlier complaint against him and thereafter engaged in a concerted effort to get rid of her. (*Id.* ¶¶ 34-40, Pg ID 5-6.) At some point in time, Plaintiff was placed on a PIP and was asked to resign. (*Id.* ¶ 41, Pg ID 6.) Plaintiff refused. (*Id.*) She was terminated on August 5, 2019. (*Id.* ¶ 45, Pg ID 6.)

It appears that Plaintiff had been previously terminated from Cisco in 2008. (*See* Defs.' Mot. Ex. 1 at 6, ECF No. 8-1 at Pg ID 59.) On September 19, 2008, counsel for Plaintiff—the same attorney representing her in the present action— filed a demand for arbitration with respect to Plaintiff's employment and termination with the American Arbitration Association ("AAA"). (*Id.*) A letter from counsel to the AAA, to which the demand was attached, states, in relevant part: "Pursuant to the arbitration provision in [Plaintiff's] employment application, we are filing a demand for arbitration. Enclosed please find two (2) copies of the Demand *with arbitration agreement attached.*" (*Id.* (emphasis added).) The attached arbitration agreement is an unsigned Cisco arbitration agreement, apparently printed from Cisco's website. (*Id.* at 6-16, Pg ID 59-69.) Plaintiff served Cisco with the arbitration demand on September 22, 2008. (*Id.* at 5, Pg ID, Pg ID 58.)

3

The parties settled Plaintiff's claims in 2009, resulting *inter alia* in Plaintiff resuming employment with Cisco. (*See* Pl.'s Resp. Ex. A, ECF No. 9-1 at Pg 96-100.) The settlement agreement contains an integration clause which states, in relevant part: "This Agreement … does not modify, amend or supersede written Cisco Agreements that are consistent with enforceable provisions of this Agreement, such as Cisco's 'Proprietary Information and Invention Agreement' and Cisco's Arbitration Agreement and Policy." (*Id.* ¶ 9, Pg ID 99.)

### Parties' Arguments

Defendants seek dismissal of Plaintiff's Complaint, arguing that her claims are subject to arbitration pursuant to the arbitration agreement between Plaintiff and Cisco. Defendant contends that Plaintiff is estopped from challenging the agreement, as she invoked it against Cisco in the past.[1]

In response, Plaintiff argues that no arbitration agreement exists between the parties and she is not judicially estopped from arguing that the alleged agreement is invalid or inapplicable to her claims. Plaintiff contends that if an arbitration

---

[1] In the brief in support of their motion, Defendants address various issues relevant to whether the arbitration agreement is valid and binding and whether the claims in Plaintiff's Complaint fall within its scope. As Plaintiff does not address those issues in response, the Court finds it unnecessary to list those arguments here. *See Boone v. Heyns*, No. 12-14098, 2017 WL 3977524, at *5 (E.D. Mich. Sept. 11, 2017) (finding that an "argument[] [is] deemed conceded and waived" where plaintiff did not refute it in his brief).

4

agreement exists, one would expect the party seeking to compel arbitration to attach it to its motion, which she claims Defendants did not. Plaintiff maintains that Defendants instead attached an unsigned sample agreement downloaded from Cisco's website. (*See* Defs.' Resp. Ex. 1 at 13-16, ECF No. 8-1 at Pg ID 66-69.) Plaintiff also argues that she is not estopped from taking the position that there is no agreement to arbitrate, as evidence that a party once voluntarily agreed to arbitrate a single dispute is not indicative of a binding agreement to arbitrate all disputes between the parties.

Defendants point out in reply that the arbitration agreement attached to their motion is the agreement Plaintiff's counsel submitted when she filed the arbitration demand on Plaintiff's behalf in 2008. Defendants further point out that Plaintiff's counsel identified this arbitration agreement as the operative agreement governing Plaintiff's claims concerning her employment. As Plaintiff's sole response to Defendants' motion was to deny the existence of the arbitration agreement, Defendants argue that she has conceded the other arguments raised in their motion.

## Applicable Law and Analysis

The alleged arbitration agreement falls within the scope of the Federal Arbitration Act ("FAA"). *See McGee v. Armstrong*, 941 F.3d 859, 865 (6th Cir. 2019) (citing *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109 (2001)). Section 2 of the FAA provides that written arbitration agreements involving

commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Upon concluding that the plaintiff's claims are subject to arbitration, a district court may dismiss the action or, if requested by a party, stay the action. *See Hilton v. Midland Funding, LLC*, 687 F. App'x 515, 518-19 (6th Cir. 2017); *Ozormoor v. T-Mobile USA, Inc.*, 354 F. App'x 972, 975 (6th Cir. 2009) (citing *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1275 (6th Cir. 1990)).

Courts look to general principles of state contract law to determine whether a valid arbitration agreement exists. *Tillman v. Macy's, Inc.*, 735 F.3d 453, 456 (6th Cir. 2013) (citing *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007)). Here, the parties each cite Michigan law in their briefs. Michigan law requires an offer and acceptance to form a contract. *Hegenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 417 (6th Cir. 2011) (quoting *Pakideh v. Franklin Com. Mortg. Grp., Inc.*, 540 N.W.2d 777, 780 (Mich. Ct. App. 1995)); *see also Kamalnath v. Mercy Mem'l Hosp. Corp.*, 487 N.W.2d 499, 503 (Mich. Ct. App. 1992) ("A contract is made when both parties have executed or accepted it, and not before."). What constitutes an offer or acceptance under Michigan law was summarized by the Sixth Circuit in *Hegenreder*:

> "An offer is defined as the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Kloian v. Domino's Pizza LLC*, 273 Mich. App.

> 449, 733 N.W.2d 766, 770 (2006) (internal quotations marks omitted). Similarly, "an acceptance sufficient to create a contract arises where the individual to whom an offer is extended manifests an intent to be bound by the offer, and all legal consequences flowing from the offer, through voluntarily undertaking some unequivocal act sufficient for that purpose." *Id*. at 771 (quotation marks omitted; alteration removed).

656 F.3d at 417.

"Whether the parties have mutually agreed to be bound [by contract] 'is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind.'" *Id*. (quoting *Kloian*, 733 N.W.2d at 771). Pursuant to the FAA, "arbitration agreements … need to be written, but not necessarily signed." *Seawright*, 507 F.3d at 978; *see also High v. Capital Senior Living Properties 2-Heatherwood, Inc.*, 594 F. Supp. 2d 789, 798 (E.D. Mich. 2008) ("The absence of a signature is not necessarily fatal to a finding of an agreement."); *cf. Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 415 (6th Cir. 2011) (acknowledging that a signature is not necessary to enter into an arbitration agreement but recognizing that one "can serve as ironclad proof that an employee was reasonably notified of an arbitration agreement"). "Michigan law permits an inference that an offeree accepted the terms of the agreement when she signaled her assent through conduct." *High*, 594 F. Supp. 2d at 798 (citing *Pakideh*, 540 N.W.2d at 780) ("If an offer does not require a specific form of acceptance, acceptance may be implied by the offeree's conduct."); *see*

7

*also Sanchez v. Eagle Alloy Inc.*, 658 N.W.2d 510, 517 (Mich. Ct. App. 2003) ("A meeting of the minds can be found from performance and acquiescence in that performance.").

The party seeking to enforce an arbitration agreement has the burden to show the agreement's existence. *Ford v. Midland Funding LLC*, 264 F. Supp. 3d 849, 855 (E.D. Mich. 2017) (citing *Bank of Am., N.A. v. First Am. Title Ins. Co.*, 878 N.W.2d 816, 829 (Mich. 2016)); *see also AFT Mich. v. State of Mich.*, 866 N.W.2d 782, 804 (Mich. 2015). On the other hand, the party opposing arbitration has the burden to show that the agreement is not enforceable. *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91-92 (2000).

In the present matter, Defendants have not produced an arbitration agreement executed by Plaintiff. The record contains only a sample arbitration agreement from Cisco's website. And while Defendants point out that an employer may inform an employee that the employee will be subject to an arbitration agreement through documentation on the company's internal website and that an offer to arbitrate disputes may be accepted through continued employment (Defs.' Reply at 3-4, ECF No. 10 at Pg ID 106-07), in each of the cases Defendants cite for these propositions, the courts relied on evidence showing that the employee had actual notice of the arbitration agreement.

For example, in *Seawright*, the employer began notifying its employees of the dispute resolution program through a series of announcements and informational meetings. 507 F.3d at 970. The employer mailed letters to employees concerning the program and included a brochure which stated, in relevant part: "Seeking, accepting, or continuing employment with AGF means that you agree to resolve employment related claims against the company or another employee through this process [the dispute resolution program] instead of through the court system." *Id*. at 971. The plaintiff in *Seawright* signed an attendance sheet acknowledging her attendance and receipt of information concerning the dispute resolution program. *Id.*

Similarly, in *Lancaster v. Comcast Communications Management LLC*, No. 16-14446, 2017 WL 3616495 (E.D. Mich. Aug. 23, 2017), in addition to posting a description of the arbitration program on the company website, the company's vice president presented two webinars to a group of employees that included the plaintiff. *Id*. at *1. While the plaintiff claimed that he had no knowledge of the program, the attendance sheet from one of the webinars showed that he was present for its duration. *Id.* at *2. The company also mailed a letter and brochure about the program to employees and tracked the mailings to confirm that they were received. *Id*. at *1-2. Records reflected that the letter and brochure mailed to the plaintiff were not returned as undeliverable. *Id*. at *2. Finally, an email was sent

9

to the plaintiff about the program and the company maintained a record reflecting who deleted the email without opening it or who was out of the office when it was sent. *Id*. The plaintiff's name did not appear on either list.

Here, in contrast, Defendants present no evidence to show that Cisco effectively communicated to Plaintiff an offer to enter into a binding arbitration agreement. There is no indication that Plaintiff was directed to information on Cisco's website to learn about the arbitration program, or that Cisco held any presentations or distributed any materials to employees concerning it. For those reasons, this case appears to be more like *Hergenreder*, where the Sixth Circuit found no objective manifestation of the plaintiff's intent to enter into an arbitration agreement with her employer. 656 F.3d at 418. There are critical distinctions between the present case and *Hergenreder*, however.

In *Hergenreder*, there was no evidence that the plaintiff had ever seen the arbitration agreement prior to the litigation or that she had manifested an intent to be bound by its terms. *Id.* at 413. The plaintiff swore in an affidavit that she had "'never seen or signed any of these documents,' referring to the [dispute resolution agreement]." *Id.* at 415. Plaintiff, here, has not stated in an affidavit or otherwise that she has never seen Cisco's arbitration agreement. In fact, Plaintiff acknowledged the agreement's existence more than ten years ago when she submitted the demand to arbitrate her earlier employment claims against Cisco.

10

She in fact attached a copy of the arbitration agreement to her demand, referring to it as "the arbitration provision in her employment application." (Defs.' Mot. Ex. 1 at 6, ECF No. 8-1 at Pg ID 59.) Additionally, Plaintiff acknowledged the existence and enforceability of "Cisco's Arbitration Agreement and Policy" in the 2009 settlement agreement. (Pl.'s Resp. Ex. A ¶ 9, ECF No. 9-1 at Pg ID 99.) Based on this conduct, Plaintiff cannot now claim that the agreement does not exist.

Further, by invoking the arbitration agreement previously, Plaintiff waived any challenge based on its existence. "A waiver is 'the intentional relinquishment or abandonment of a known right.'" *PolyOne Corp. v. Westlake Vinyls, Inc.*, 937 F.3d 692, 697 (6th Cir. 2019) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)) (quotation marks and citation omitted in *PolyOne*). In *PolyOne*, the Sixth Circuit joined the Ninth and Fifth Circuits in holding that "a party waives its ability to challenge an arbitration agreement when it demands arbitration[.]" *Id.* (citing *Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437, 1440 (9th Cir. 1994) and *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers Union, Local No. 1*, 611 F.2d 580, 584 (5th Cir. 1980)); *see also Jones Dairy Farm v. Local No. P-1236, United Food & Commercial Workers Int'l Union, AFL-CIO*, 760 F.2d 173, 175-76 (7th Cir. 1985). The effect of Plaintiff's prior arbitration demand based on "the arbitration provision in her employment application" (Defs.' Mot Ex. 1 at 6, ECF No. 8-1 at Pg ID 59) is not undermined

by the statement in her demand that it "does not constitute an admission that [Plaintiff]'s claims are subject to a mandatory agreement to arbitrate" (*id.* at 8, Pg ID 61). This is because, by her prior conduct, Plaintiff undisputedly acknowledged the existence of the arbitration provision and it is for this Court to decide whether the provision requires mandatory arbitration, which it does.

Plaintiff's reference to and attachment of the arbitration agreement to her demand letter and the terms of the 2009 settlement agreement reflect her prior awareness of the agreement, its terms, and its binding impact. Those terms included the following:

> We understand and agree that this Agreement contains the complete agreement between Cisco and Employee regarding the subjects covered in it; that it supersedes any and all prior representations and agreements between us, if any; and that it may be modified only in a writing, expressly referencing this Agreement, and signed by the Chief Executive Officer of Cisco and Employee. If this modification has not been signed by the Employee, *but the Employee continues to accept employment after having notice of the modification, it shall become effective after a reasonable period.*

(*Id.* at 16, Pg ID 69 (emphasis added).) The agreement further states that it "shall immediately apply to [the] Employee upon signing *or within a reasonable time following continued employment*." (*Id.* (emphasis added).) Sixth Circuit caselaw establishes that Plaintiff expressly assented to the arbitration agreement when she continued to work for Cisco after knowing these terms. *See Seawright*, 507 F.3d at 970 (holding that the plaintiff's "knowing continuation of employment after the

12

effective date of the arbitration program constituted acceptance of a valid and enforceable contract to arbitrate"); *Dawson v. Rent-A-Center Inc.*, 490 F. App'x 727, 730 (6th Cir. 2012) (citing *Pakideh v. Franklin Commercial Mrtg. Grp.*, 540 N.W.2d 777, 780 (Mich. Ct. App. 1995)) (applying Michigan law holding that parties may accept offers through conduct to find that the plaintiff demonstrated his assent to arbitrate disputes with his employer by continuing to work after becoming aware of arbitration agreement).

For these reasons, the Court concludes that Plaintiff accepted Cisco's agreement to arbitrate "any and all disputes or claims arising from or relating to [her] … employment with Cisco, or the termination of that employment, including claims against any current or former agent or employee of Cisco." (Defs.' Mot. Ex. 1 at 13, ECF No. 8-1 at Pg ID 66.) There can be no question that Plaintiff's current claims are covered by the arbitration agreement; Plaintiff does not successfully argue otherwise. Nor does Plaintiff raise any other arguments to show that the agreement is unenforceable.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Compel Arbitration and to

14

Dismiss the Complaint (ECF No. 8) is **GRANTED**.

    **IT IS SO ORDERED**.

                                                s/ Linda V. Parker
                                                LINDA V. PARKER
                                                U.S. DISTRICT JUDGE

Dated: September 8, 2020